1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   JORDAN LEE EMBREY,                      |   Case No.  1:20-cv-00650-BAM (PC)

12            Plaintiff,                      |   ORDER DIRECTING CLERK OF COURT TO
                                                  RANDOMLY ASSIGN DISTRICT JUDGE
13      v.
                                                 FINDINGS AND RECOMMENDATIONS
14   FRESNO COUNTY SHERIFF, et al.,           |   REGARDING DISMISSAL OF CERTAIN
                                                 CLAIMS AND DEFENDANTS
15            Defendants.
                                                 **FOURTEEN-DAY DEADLINE**
16

17

18          Plaintiff Jordan Lee Embrey ("Plaintiff") is a county jail inmate proceeding pro se in this

19   civil rights action under 42 U.S.C. § 1983.  On August 10, 2020, the Court screened Plaintiff's

20   complaint and granted him leave to amend.  (ECF No. 9.)  Plaintiff's first amended complaint,

21   filed on September 1, 2020, is currently before the Court for screening.  (ECF No. 10.)

22          **I.      Screening Requirement and Standard**

23          The Court is required to screen complaints brought by prisoners seeking relief against a

24   governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

25   § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

26   or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

27   relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

28
                                                1

1   A complaint must contain "a short and plain statement of the claim showing that the

2   pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

3   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

4   conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

5   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken

6   as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores,

7   Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

8   To survive screening, Plaintiff's claims must be facially plausible, which requires

9   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

10   for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S.

11   Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted

12   unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the

13   plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

14   **II.    Plaintiff's Allegations**

15   Plaintiff is currently housed in the Fresno County Jail, where the events in the amended

16   complaint are alleged to have occurred.  Plaintiff names the following defendants in their

17   individual and official capacities: (1) Captain Stephen McComas; (2) Brandon Boggs, Wellpath

18   Medical; (3) Danielle Muratore, Wellpath Medical; (4) Amanda Gibson, Wellpath Medical; (5)

19   Lieutenant Ned Barton; (6) Jamie Silveira, Wellpath Medical; (7) Karen Nunez; (8) Dr.

20   Obendena; (9) Z. Williams, Wellpath Medical LVN; (10) Sheriff Margaret Mimms; and (11) A.

21   Snyder.

22   Plaintiff contends that on August 18, 2018, he was beaten and had his jaw broken.  He

23   was sent to CRMC and admitted. He was told that he had a severe break and would have surgery

24   the next day.  Shortly thereafter, a nurse told him that he was being sent back to the Fresno

25   County Jail.  A specialist put a single wire in his lower jaw to stop his jaw from falling. The lower

26   left side of his jaw was not connected to the upper or lower jaw, only gum tissue.  Plaintiff

27   informed the specialist that he was being released to the jail.  The specialist said that the jail

28   would send him back the following day, but the sheriff's officer that was present told him that

2

1    would not happen, and that Plaintiff should stay there until after surgery.  Plaintiff was still sent

2    back to jail.  Plaintiff claims that the act of sending him back to the jail deprived him of medical

3    due process for his serious medical need.  He also claims medical negligence by both the hospital

4    and the Fresno County Jail, which caused his jaw to be uneven and his surgery not being done in

5    adequate time.

6          After arriving back at the Fresno County Jail, Plaintiff informed Dr. Obendena that he was

7    to have surgery the next day.  Dr. Obendena informed Plaintiff that it could not happen, and that

8    Plaintiff should have stayed at the hospital.  Dr. Obendena then cleared Plaintiff for housing on a

9    medical floor instead of sending him back to the hospital to ensure that he received surgery.

10          Plaintiff alleges:

11          I then informed the medical staff, the COS and asked them to tell Dr. Obendena
         the next day that if they can inform the [illegible] "Ned Barton" Captain "Stephen
12          McComas," and the higher up medical people who deal with such schedualling
         [sic] "Amanda gibson" brandon boggs" if I was going to be sent to my surgery for
13          today was the day I was to get my jaw fixed.  I was told again I should have
         stayed at the hospital if I had surgery today.
14

15    (Doc. No. 10 at 8.)

16          While on the medical floor, Plaintiff was in constant pain and discomfort because the

17    medication he was given was not strong and it was cancelled after a few weeks.  Plaintiff

18    continually asked LVN Williams and Dr. Obendena why he was not sent for his surgery and

19    when he was going to be sent.  They said they did not know, and that Plaintiff should have had

20    surgery when he was sent to hospital.  Plaintiff alleges that he was not taken back to the hospital

21    for surgery until November 7, 2018, three months later.  Plaintiff alleges that Dr. Obendena did

22    not send Plaintiff back to the hospital immediately after being informed that he was to have

23    surgery.  Knowing that the jail would not send Plaintiff back, Dr. Obendena should not have

24    cleared Plaintiff to stay on the medical floor until he had the proper surgery.

25          On the day his surgery, Plaintiff's jaw was re-broken because the bones were growing and

26    fusing together.  Plaintiff's jaw was put back in place and wired shut.  He was then sent back to

27    the medical floor in the Fresno County Jail.

28          On or around December 11 or 13, 2018, Plaintiff was taken back to CRMC and the wires

1    were removed.  The doctor reportedly informed Plaintiff that because it took too long to do the

2    first surgery, he had to have several other surgeries.  The doctor also asked why Plaintiff

3    cancelled the first surgery and did not get it fixed.  The doctor stated that Plaintiff's jaw was not

4    aligned correctly and that he would need to return for more surgery.  Plaintiff was then sent back

5    to the Fresno County Jail medical floor.  When he asked Dr. Obendena why his surgery was

6    cancelled, Plaintiff was told that it was the higher up medical scheduling.  Dr. Obendena also

7    passed the blame to the hospital.

8         Plaintiff claims that he should have been housed on the medical floor, where conflicts are

9    rare, because of his jaw.  In May 2019, he was sent to the M5 5th Floor A-pod.  During that time,

10   he was in constant pain and the Tylenol-codeine pills that took away some of the pain were

11   cancelled.  Plaintiff alleges that he was housed with cellmates that wanted to fight and cause

12   conflict.  He asserts that this could have seriously harmed him.

13        At the end of July to the beginning of August, Plaintiff was sent back to CRMC to get the

14   metal in his mouth removed in preparation for another surgery that would take place in a few

15   months.  Plaintiff was then sent back to the M5 A-pod.  Plaintiff claims that he feared for his

16   safety until he returned to CRMC for another surgery in January because he was housed with a

17   cellmate that wanted to fight.

18        Following surgery, Plaintiff's jaw is still in pain and is uneven.  Plaintiff asserts that this is

19   because he did not have the proper surgery at the proper time.  Plaintiff further alleges that Sheriff

20   Margaret Mimms was at the top of the command and overseer of the Fresno County Jail. Plaintiff

21   claims she was well aware of the policies, but she failed to comply with the guidelines of those

22   policies to ensure Plaintiff's medical needs.

23        As relief, Plaintiff seeks compensatory and punitive damages, along with expert care.

24        **III.    Discussion**

25        **A.  Official Capacity**

26        To the extent Plaintiff is attempting to pursue damages claims against the named

27   Defendants in their official capacities, he may not do so. "The Eleventh Amendment bars suits for

28   money damages in federal court against a state, its agencies, and state officials in their official

4

1    capacities." <u>Aholelei v. Dep't. of Pub. Safety</u>, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations

2    omitted). However, the Eleventh Amendment does not bar suits seeking damages against state

3    officials in their personal capacities, <u>Hafer v. Melo</u>, 502 U.S. 21, 30 (1991); Porter v. Jones, 319

4    F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their

5    official capacities, <u>Austin v. State Indus. Ins. Sys.</u>, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus,

6    Plaintiff may only proceed against Defendants in their individual capacities for monetary

7    damages.

8        **B.  Linkage Requirement**

9        The Civil Rights Act under which this action was filed provides:

10       Every person who, under color of [state law] ... subjects, or causes to be
         subjected, any citizen of the United States ... to the deprivation of any rights,
11       privileges, or immunities secured by the Constitution ... shall be liable to the party
         injured in an action at law, suit in equity, or other proper proceeding for redress.
12

13   42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between

14   the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. <u>See</u>

15   <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). The

16   Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional

17   right, within the meaning of section 1983, if he does an affirmative act, participates in another's

18   affirmative acts or omits to perform an act which he is legally required to do that causes the

19   deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

20       With the exception of LVN Williams, Dr. Obendena and Sheriff Mimms, Plaintiff's

21   amended complaint fails to adequately link the remaining named defendants to alleged

22   constitutional violations.  Although Plaintiff mentions Defendants Barton, McComas, Gibson and

23   Boggs in his complaint, he does not include any factual allegations identifying what each of these

24   individual defendants did or did not do that resulted in a violation of his rights.  Plaintiff also fails

25   to include any factual allegations in his amended complaint related to Defendants Muratore,

26   Silveira, or Nunez.  Despite being provided with the relevant pleading standard, Plaintiff has

27   failed to cure this deficiency as to Defendants Barton, McComas, Gibson, Boggs, Muratore,

28   Silveira or Nunez.

1          **C.  Supervisory Liability**

2          Insofar as Plaintiff is attempting to assert a claim against Defendant Mimms (or any other

3   defendant) based on her supervisory role, he may not do so. Supervisory personnel may not be

4   held liable under section 1983 for the actions or omissions of subordinate employees based on

5   respondeat superior, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir.

6   2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir.

7   2013); Lacey v. Maricopa Cty., 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor

8   may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2)

9   there is a sufficient causal connection between the supervisor's wrongful conduct and the

10  constitutional violation." Crowley, 734 F.3d at 977; accord Lemire, 726 F.3d at 1074-75; Lacey,

11  693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt

12  personal participation in the offensive act if supervisory officials implement a policy so deficient

13  that the policy itself is a repudiation of constitutional rights and is the moving force of a

14  constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646

15  (9th Cir. 1989)) (internal quotation marks omitted).

16         Plaintiff's amended complaint does not include any allegations linking Defendant Mimms

17  to a constitutional violation or otherwise identifying a deficient policy that was the moving force

18  of any constitutional violation.  Instead, Plaintiff alleges that Defendant Mimms failed to follow

19  policy.  However, Plaintiff's amended complaint does not include any factual allegations

20  demonstrating or suggesting that Defendant Mimms knew that Plaintiff needed jaw surgery and it

21  was not timely scheduled.

22         **D.  Eighth and Fourteenth Amendments - Medical Care**

23         It is unclear whether Plaintiff was a pretrial detainee or convicted prisoner during the

24  relevant time period.[1]  To the extent that Plaintiff was a pretrial detainee during the relevant time

25  ───────────────────

    [1]      Although unclear, it appears that Plaintiff was a pretrial detainee at the time of the events
26  alleged.  The Court takes judicial notice of Plaintiff's pending criminal matter in Fresno County
    Superior Court, The People of the State of California v. Jordan Lee Embrey, Case No.
27  F16902216, filed October 19, 2017 and currently set for a tentative jury trial date of October 13,
    2020.  The court may take judicial notice of state court records.  See Bias v. Moynihan, 508 F.3d
28  1212, 1225 (9th Cir. 2007); Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir.

                                              6

1    period, his claims concerning his medical care arise under the Fourteenth Amendment's Due

2    Process Clause rather than the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16

3    (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied on in

4    considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only

5    after the State has complied with the constitutional guarantees traditionally associated with

6    criminal prosecutions"); Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) ("We have said

7    that the Due Process Clause protects a pretrial detainee from the use of excessive force that

8    amounts to punishment." (internal quotation marks omitted)).

9         The Ninth Circuit has held that "the proper standard of review" for claims of inadequate

10   medical care for pretrial detainees is "objective indifference." Gordon v. Cty. of Orange, 888 F.3d

11   1118, 1120, 1124–25 (9th Cir. 2018) (extending the "objective deliberate indifference standard"

12   articulated in Castro to inadequate medical care); see also Horton v. City of Santa Maria, 915 F.3d

13   592, 602 (9th Cir. 2019) (noting that Gordon "recognized that Castro's objective deliberate

14   indifference standard extends to Fourteenth Amendment claims by pretrial detainees for

15   violations of the right to adequate medical care").

16        Accordingly, in order to state a claim against any defendant for denial of medical care

17   while a pretrial detainee, plaintiff must allege that the defendant: (1) "made an intentional

18   decision with respect to the conditions under which the plaintiff was confined"; (2) the

19   "conditions put the plaintiff at substantial risk of suffering serious harm"; (3) the "defendant did

20   not take reasonable available measures to abate that risk, even though a reasonable official in the

21   circumstances would have appreciated the high degree of risk involved—making the

22   consequences of the defendant's conduct obvious"; and (4) "by not taking such measures, the

23   defendant caused the plaintiff's injuries." Gordon, 888 F.3d at 1125.

24        At the pleading stage, the Court finds that Plaintiff's amended complaint states a

25   cognizable medical deliberate indifference claim against Defendants Dr. Obendena and Williams.

26   Even if Plaintiff was a convicted prisoner at the time of the alleged events, the Court finds that

27

28   1964).

1   Plaintiff's amended complaint states a cognizable claim for deliberate indifference arising under

2   the Eighth Amendment.  Denial or delay of medical care can violate the Eighth Amendment if it

3   amounts to cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). More

4   specifically, a violation occurs when a prison official causes injury as a result of at least his or her

5   deliberate indifference to a prisoner's serious medical needs. *Id.* Mere delay of medical treatment

6   or surgery, "without more, is insufficient to state a claim of deliberate medical indifference."

7   Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  However,

8   delays may be actionable if a plaintiff's condition predictably worsened during the delay or

9   became more difficult to treat due to the delay.  See Perez v. Brady, No. 2:19-cv-04309-VBF-

10  KES, 2020 WL 2441434, at *5 (C.D. Cal. Mar. 16, 2020), report and recommendation adopted,

11  No. 2:19-cv-04309-VBF-KES, 2020 WL 2395210 (C.D. Cal. May 12, 2020).  Plaintiff alleges

12  that Defendants Dr. Obendena and Williams knew of Plaintiff's need for jaw surgery, that there

13  was a delay in his treatment, and, given the condition of his jaw, the delay likely would cause his

14  condition to worsen or become more difficult to treat.

15          **IV.      Conclusion and Recommendation**

16          Based on the above, the Court finds that Plaintiff's first amended complaint states a

17  cognizable medical indifference claim against Defendants Dr. Obendena and Williams.   Plaintiff

18  fails to state any other cognizable claims.  Despite being provided with the relevant pleading and

19  legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to

20  amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

21          Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a

22  district judge to this action.

23          Further, IT IS HEREBY RECOMMENDED as follows:

24          1.      This action proceed on Plaintiff's first amended complaint, filed on April 10, 2020,

25  on Plaintiff's medical deliberate indifference claim against Defendants Dr. Obendena and

26  Williams; and

27          2.      All other federal claims and all other defendants be dismissed from this action

28  based on Plaintiff's failure to state claims upon which relief may be granted; and

8

1        These Findings and Recommendation will be submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen**

3    **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

4    objections with the Court. The document should be captioned "Objections to Magistrate Judge's

5    Findings and Recommendation." Plaintiff is advised that failure to file objections within the

6    specified time may result in the waiver of the "right to challenge the magistrate's factual findings"

7    on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>,

8    923 F.2d 1391, 1394 (9th Cir. 1991)).

9

10   IT IS SO ORDERED.

11      Dated:   **September 25, 2020**                    /s/ *Barbara A. McAuliffe*       _

12                                           UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28